UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID WITTWER; LINDA WITTWER; THE WITTWER FAMILY TRUST; DANIEL DOYLE; SHARLA DOYLE; DANIEL L. DOYLE AND SHARLA K. DOYLE TRUST; MICHAEL WILLIAMS; GRACE WILLIAMS and LEE WILSON, | Case No. 2:25-cv-000395-AKB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| J & J DEVELOPMENT, LLC; JOSHUA PILCH, individually and in his official capacity; JACOB MARBLE, individually and in his official capacity; JEFF CONNOLLY, individually and in his official capacity; STEVEN BRADSHAW, individually and in his official capacity; DANIEL MCDONALD, individually and in his official capacity; MILTON OLLERTON, individually and in his official capacity; BONNER COUNTY, a political subdivision of the State of Idaho; PANHANDLE HEALTH DISTRICT; TIMOTHY FRENCH, individually and in his official capacity; KATHRYN KOLBERG, individually and in her official capacity; JASON PEPPIN, individually and in his official capacity; CHRISTOPHER IRVIN, individually and in his official capacity; TYSON GLAHE; GLAHE & ASSOCIATES, INC.; JAMES A. SEWELL AND ASSOCIATES, LLC; NORTHSTAR CONSTRUCTION & DEVELOPMENT LLC; TWIN W PROPERTIES, LLC; LEATHERMAN DEVELOPMENT LLC; PILCH CUSTOM HOMES INC.; TOM DUEBENDORFER; OVER UNDER TITLE LLC dba TITLEONE; ROBERTA NUTT; JESSICA SKILES; CODY TELFORD; RUTH BARBEY; LOGAN TRAIL LLC; NORTH IDAHO GROUP, LLC dba | |

**MEMORANDUM DECISION AND ORDER – 1**

CENTURY 21 RIVERSTONE;
CHRISTOPHER NEU; NANCY DOOLEY;
ERIC SKINNER; CDARE GROUP LLC dba
KELLER WILLIAMS REALTY COEUR
D'ALENE; CHANDLER JOHNSON; JOHN
DOES 1 THROUGH 10; AND DOE
COMPANIES 1 THROUGH 10,

Defendants.

Plaintiffs Linda Wittwer, David Wittwer, The Wittwer Family Trust (collectively the Wittwers), Daniel Doyle, Sharla Doyle, Daniel L. Doyle and Sharla K. Doyle Trust (collectively the Doyles) Michael Williams, Grace Williams (collectively the Williams), and Lee Wilson brought this action against thirty-three Idaho Defendants based on allegations relating to their residences in the Mountain Homestead development in Sandpoint, Idaho. Plaintiffs allege a claim against all Defendants under the Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. §§ 1961–1968, and seven state law claims. For the reasons discussed below, the Court dismisses Plaintiffs' RICO claim against all Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim; it denies Plaintiffs' motion to amend their complaint under Rule 15 of the Federal Rules of Civil Procedure because their amendment is futile; and it declines to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3).

## I.    BACKGROUND

According to Plaintiffs' allegations, Defendant J&J Development LLC (J&J) purchased approximately 41.6 acres of land in Sandpoint, Idaho, for purposes of dividing it into multiple residential lots, known as the Mountain Homestead development (Dkt. 2 ¶ 46). In early 2019, J&J divided the land into two parcels and submitted minor land division (MLD) applications to the Bonner County Planning Department to divide each parcel into four lots, referred to as Mountain

MEMORANDUM DECISION AND ORDER – 2

Homestead 1 (MH1) and Mountain Homestead 2 (MH2) (*id.* ¶¶ 46–47). Eventually, the Wittwers, the Williams, and Wilson each purchased a residential lot in MH1, and the Doyles purchased a lot in MH2 (*id.* ¶¶ 50–51).

Plaintiffs allege that they "have experienced significant problems with essentially every aspect of the Mountain Homestead development, including with the septic system, water wells, drainage, utilities, and access road" (*id.* ¶ 51). Relevant to the Court's decision here, Plaintiffs attribute these problems to Defendants' allegedly fraudulent conduct, and they assert a RICO claim under 18 U.S.C. §§ 1961–1968, against thirty-three Idaho Defendants (*id.* ¶¶ 7–38; 221–230).

These thirty-three Defendants include J&J; its principals, Joshua Pilch and Jacob Marble; a land surveyor, Glahe & Associates, and its principal, Tyson Glahe; Bonner County, its County Commissioners, and its Planning Director; the Panhandle Health District and four of its employees; various entities involved in the design and installation of the community septic system; numerous real estate agents; and other entities and third parties. Plaintiffs base their RICO claim against all these Defendants on mail and wire fraud, alleging generally that all Defendants "knowingly and willfully used the mail and wires on multiple occasions" to execute a scheme to defraud them in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) (*id.* ¶ 224).

The apparent gist of Plaintiffs' allegations is that Defendants conspired to defraud them into purchasing defective properties (*see, e.g.*, Dkt. 2 at 35 (stating "Numerous Defendants Conspire[d] to Defraud Plaintiffs Into Purchasing Defective Properties")). As alleged in Plaintiffs' RICO claim (*id.* ¶¶ 221–230), Defendants' fraudulent acts relate primarily to three matters: (1) the approval of the Mountain Homestead development to include an "illegal fifth lot"; (2) the creation and use of an access road, Logan Drive, on that fifth lot; and (3) the installation of a defective drain field and community septic system (*id.* ¶ 227 (subparagraphs a–r)).

MEMORANDUM DECISION AND ORDER – 3

Plaintiffs allege that J&J's MLD applications "suffered material and obvious defects" and that "Bonner County never should have approved them" (*id.* ¶ 57). More specifically, they allege the applications created an "illegal fifth lot" because J&J submitted the applications showing 5-acre plats even though the plats were only 4.83 acres (*id.* ¶¶ 58–62). To obtain approval for this reduction in acreage, J&J and Glahe & Associates submitted an Administrative Exception Application (Exception) to Bonner County requesting 4.83 acres plats; the Exception explained that the reduction in lot size was necessary to create a sixty foot strip of land to be used as an easement for ingress, egress and utilities for the development (*id.* ¶¶ 61, 64, 70). Plaintiffs refer to this strip of land as "an illegal fifth lot" (*id.* ¶ 75).

The "illegal fifth lot" was used to construct an access road, Logan Drive, which provides the only access to Plaintiffs' homes (*id.* ¶ 76). Plaintiffs describe the reduction in lot sizes to create Logan Drive as a "grand scheme" which proved "disastrous" to them because J&J eventually sold Logan Drive to a third party, who also needed access to develop land in the area (*id.* ¶ 80). Plaintiffs allege, based on information and belief, that J&J, Pilch, Marble, and Glahe conspired with Bonner County, its Planning Director, and its County Commissioners "to push the fraudulent Exception request and nonconforming MLD applications through and used the mail and/or wires in the course of doings so" (*id.* ¶ 85).

Further, Plaintiffs aver that J&J improperly owned the "illegal fifth lot" and had an "invalid easement with respect to Logan Drive" (*id.* ¶ 227 (subparagraphs h, k)). Their allegations describe problems with J&J's construction of Logan Drive including that J&J built the road in an incorrect location which encroached a third party's property; the third party "threatened to block access" to the road; the Idaho Transportation Department (ITD) never approved the road; the road does not

comply with Bonner County's or ITD's width requirements; and J&J built the road over utility lines (*id.* ¶¶ 89, 92, 95–96, 98–99, 101).

Plaintiffs also allege problems with the ownership of Logan Drive, averring that J&J purportedly retained ownership of a portion of the "illegal fifth lot" in MH1, executed a warranty conveying this portion of Logan Drive to Defendant Ruth Barbey "without [Plaintiffs'] knowledge or consent," and arranged to have a "Schivener's Affidavit" recorded in August 2023 expanding Barbey's rights to the entire Logan Drive, which was then extended over the Doyles' property without permission (*id.* at 188–220, 227).

Plaintiffs additionally allege fraud regarding the Mountain Homestead development's drain field and community septic system, maintaining that various Defendants designed and installed a faulty system, improperly installed the septic tanks, failed to obtain permits and final approval for the septic tanks, and belatedly attempted to obtain the permits and approval (*id.* ¶ 227 (subparagraph q)). Plaintiffs further allege other related fraudulent acts such as Bonner County's "attempts to prevent" Plaintiffs from obtaining information about the misdeeds of it and its agents; installation of faulty wells; failure to transfer a well; improper placement of utilities; and faulty placement and construction of the Leatherman Road (*id.*).

Based on these allegations and many more related allegations, Plaintiffs sued the thirty-three Idaho Defendants alleging RICO violations under 18 U.S.C. § 1962(c), or alternatively, under § 1962(d) for conspiring to violate § 1962(c) (Dkt. 1). Before serving Defendants, Plaintiffs filed a first amended complaint, which is the operative complaint (Dkt. 2). Plaintiffs' complaint is approximately seventy-pages long and avers over eighty allegations based "upon information and belief." In addition to a RICO claim, Plaintiffs alleges seven state law claims.

**MEMORANDUM DECISION AND ORDER – 5**

In response to Plaintiffs' complaint, numerous Defendants filed motions to dismiss and motions for summary judgment. These filings prompted Plaintiffs to move to amend their complaint again (Dkt. 99). Their proposed amended complaint deletes approximately thirty-nine instances of the phrase "upon information and relief" from their allegations and proposes adding five more defendants, including four real estate agents and a real estate company (*compare* Dkt. 2, *with* Dkt. 99-1). Because resolution of Plaintiffs' RICO claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure resolves this federal case, the Court focuses its analysis on that claim. In particular, it focuses on J&J's motion to dismiss Plaintiffs' RICO claim (Dkt. 81).

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." A court must consider the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Rule 8 requires a complaint to include a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To avoid dismissal under Rule 12(b)(6) a complaint must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation modified); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reiterating "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts

MEMORANDUM DECISION AND ORDER – 6

alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation modified).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., L.L.C. v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First a court should identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 996 (citation modified). Second, "a court should assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation modified). Where a complaint pleads facts which are merely consistent with the defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678 (2009).

### III.    ANALYSIS

#### A.    J&J's Motion to Dismiss

Among the numerous Defendants challenging Plaintiffs' allegations is J&J, which moved to dismiss Plaintiffs' amended complaint for failure to state a claim under Rule 12(b)(6), including Plaintiffs' RICO claim (Dkt. 80). Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER – 7**

Regardless, the statute is to "be liberally construed to effectuate its remedial purposes." *Odom v. Microsoft Corp.*, 486 F.3d 541, 546 (9th Cir. 2007) (en banc). To state a claim under §1962(c), a plaintiff must allege (1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) proximately causing the victim harm. *Eclectic Props.*, 751 F.3d at 997; *Odom*, 486 F.3d at 547. Here, J&J challenges elements two through five.

### 1.    Enterprise

Plaintiffs have failed to plausibly allege Defendants acted together as a cohesive RICO enterprise. To allege an enterprise, a plaintiff must plead that the enterprise has (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose. *Eclectic Props.*, 751 F.3d at 997. An enterprise can be a loose-knit group of people or entities, which is referred to an "association-in-fact" enterprise. "An associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "To establish the existence of such an enterprise, a plaintiff must provide both the evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Id.* (citation modified).

J&J challenges Plaintiffs' allegations of an enterprise arguing that Plaintiffs lump multiple defendants together including "a sprawling collection of private actors, county officials, and a public health district" and that these allegations fail to allege "a coherent unit," how that unit "functioned together," and each Defendant's particular role (Dkt. 81 at 22–23). Plaintiffs respond that the enterprise consists of "the listed defendants who were associated together for the common purpose of engaging in fraudulent conduct," which they describe as "mov[ing] forward with the MH development, conceal[ing] the significant problems with [the development], perpetrat[ing] the

**MEMORANDUM DECISION AND ORDER – 8**

fraudulent sale of Logan Road, and facilit[ing] the recording of a fraudulent Scrivener's Affidavit" (Dkt. 102 at 11–12; *see also* Dkt. 103 at 7).

Regarding an alleged enterprise, Plaintiffs' complaint avers generally that "Defendants formed an enterprise under 18 U.S.C. [§] 1961(4) as a partnership, corporation, association, other legal entity, or group of individuals associated in fact although not a legal entity" which "is engaged in, or its activities affect, interstate or foreign commerce" and "shared a common purpose of defrauding Plaintiffs . . . through use of the mail and/or wires" (Dkt. 2 ¶¶ 222–23, 227). These allegations, however, simply parrot the statutory definition of an enterprise. *See* § 1961(4) (defining enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"). They do not plausibly allege an enterprise because they do not provide any facts specific to this case about how various Defendants functioned as a continuing unit to defraud Plaintiffs into purchasing their residences or otherwise.

Further, Plaintiffs merely allege Defendants are associated, if at all, in a manner directly related to their own business activities. For example, Plaintiffs allege that the local government Defendants were processing applications, approving lot sizes, issuing permits, and conducting inspections. Other Defendants were creating drawings for a drain field and septic system, installing and attempting to fix the septic system, identifying and evaluating wetlands, grading lands, building roads, and selling properties. Each of these activities is an ordinary business activity of the Defendant who performed the activity. Even assuming each Defendant's purported conduct was fraudulent, that is insufficient to state a RICO claim. Courts have repeatedly held that allegations of conduct consistent with Defendants' business activities are insufficient to allege an enterprise. *See, e.g.*, *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497

F. Supp. 3d 552, 599–600 (N.D. Cal. 2020) (rejecting regular business activities as conduct of an enterprise); *Shaw v. Nissan N.A., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (recognizing that courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises); *In re Jamster Mktg. Litig.*, 05cv0819, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (concluding that "[w]ithout the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose," and dismissing RICO claim despite alleging "an overarching common purpose to engage in fraudulent conduct" because they failed "to identify specific allegations in support of the common purpose"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (ruling allegations that Defendants were associated in manner directly related to their primary business activities and that they fraudulently conducted those activities were insufficient to state claim under § 1962(c)).

### 2.    Racketeering Activity

Plaintiffs have also failed to allege any predicate acts of mail or wire fraud with particularly as Rule 9(b) of the Federal Rules of Civil Procedure requires. Racketeering activity is any act indictable under several provisions of Title 18 of the United States Code, including the predicate acts of mail fraud and wire fraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). A RICO claim predicated on mail or wire fraud, as here, is subject to Rule 9(b)'s heightened pleading standard. *Odom*, 486 F.3d at 554 ("The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself."); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("[Rule 9(b)] requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme" and "[t]he Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud.").

MEMORANDUM DECISION AND ORDER – 10

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake" and requires "that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified). "The pleader must state the time, place, and specific content of the false representations" and "the identities of the parties to the misrepresentation." *Odom,* 486 F.3d at 553. Further, Rule 9(b) "does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (citation modified); *see also Swartz v. KPMG L.L.P.*, 476 F.3d 756, 764–65 (9th Cir. 2007) (holding Rule 9(b) requires plaintiffs to inform each defendant separately of allegations surrounding their alleged participation in fraud)

J&J argues that Plaintiffs "do not plead 'predicate acts' with Rule 9(b) particularity" and that they "largely resort to collective, conclusory allegations that 'Defendants used the mail and wires' across hundreds of paragraphs, without specifying the particular statements, dates, mediums, senders, recipients, and why each statement was false" (Dkt. 81 at 24). Plaintiffs respond that their complaint "sufficient alleges that Defendants engaged in multiple predicate acts of racketeering activity" and they point to paragraphs 85, 110, 204–05, and 227 in their complaint (*see* Dkt. 2; *see also* Dkt. 102 at 13–15). Further, Plaintiffs additionally point to paragraphs 59, 61–64, 67–73, 77–78, 81–83, 104, 180, 207–11, 224–226 in their complaint as purportedly alleging predicate acts with Rule 9(b) particularity in opposition to Bonner County's motion to dismiss their RICO claim (*see* Dkt. 2; *see also* Dkt. 87-1; Dkt. 103 at 9–12).

**MEMORANDUM DECISION AND ORDER – 11**

A careful review of these identified paragraphs, however, reveals that Plaintiffs have failed to allege with particularity that any Defendant committed mail or wire fraud. Only nine of the paragraphs refer to the use of the mail or wires (Dkt. 2 ¶¶ 69, 85, 110, 180, 204, 208, 224, 226, 227). Despite such references, however, none of them identifies the specific time, place, or content of an allegedly fraudulent communication; the parties to that communication; or the means of its transmission either by mail or electronically. *See Odom*, 486 F.3d at 553 ("The pleader must state the time, place, and specific content of the false representations" and "the identifies of the parties to the misrepresentation."); *Lancaster*, 940 F.2d at 405 ("[Rule 9(b)] requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme"). Further many of the allegations simply lump multiple Defendants together without specifying each Defendant's allegedly fraudulent behavior with any specificity. *See Destfino*, 630 F.3d 958 (providing Rule 9(b) "does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant").

The remaining paragraphs Plaintiffs identify as purportedly alleging predicate acts do not cure Plaintiffs' failure to allege mail and wire fraud with particularity under Rule 9(b). Some of these paragraphs, at best, refer to a "fraudulent scheme" or a "fraudulent concealment," but they still fail to contain the requisite specificity. Neither the paragraphs Plaintiffs specifically identify as alleging predicate acts nor Plaintiffs' hundreds of allegations, collectively, sufficiently aver predicate acts with particularity. Rather, at most Plaintiffs' allegations establish that they believe there were many problems with the Mountain Homestead development; certain Defendants may have known about certain problems; some Defendants may have caused various problems; and some Defendants may have even concealed problems from Plaintiffs. These general conspiratorial

allegations, however, are inadequate to satisfy Rule 9(b) for purposes of identifying predicate acts of mail and wire fraud.

Moreover, at least thirteen of the paragraphs that Plaintiffs identify as alleging predicate acts with particularity use the phrase "upon information and belief" (*see* Dkt. 2 ¶¶ 61, 67, 69, 83, 85, 104, 110, 180 (twice), 204, 205, 207, 210). Allegations of fraud based upon information and belief generally do not satisfy the degree of particularity which Rule 9(b) requires. *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 F. App'x 701, 703 n.3 (9th Cir. 2002) (citing 5 *Wright & Miller's Federal Practice & Procedure* § 1298 (1st ed. 1969)). Although this rule may be relaxed "as to matters peculiarly within the opposing party's knowledge," this exception applies only if the "allegations are accompanied by a statement of facts upon which the belief is founded." *Id.*; *see also Yagman v. Gabbert*, 684 F. App'x 625, 627 (9th Cir. 2017) (noting "nonspecific RICO allegations" based on information and belief cannot survive motion to dismiss); *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014) (requiring plaintiff to provide grounds for suspicions and to show facts constituting fraud is not accessible to him and when pleading fraud based upon information and belief plaintiff); *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (requiring plaintiff to provide sufficient factual detail despite that facts are uniquely within defendant's control), *overruled in part on other grounds by Chochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 587 U.S. 262 (2019).

In summary, Plaintiffs have not plausibly alleged the existence of a distinct enterprise; they have not alleged any predicate acts with sufficient particularity under Rule 9(b); and as a result, they have not alleged a pattern of racketeering activity. Because Plaintiffs have not plausibly alleged a substantive RICO violation under § 1962(c), their claims under § 1962(d) also fails. *See*

**MEMORANDUM DECISION AND ORDER – 13**

*Sanford*, 625 F.3d at 559 (9th Cir. 2010) ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved."). Accordingly, the Court grants J&J's motion to dismiss Plaintiffs' federal RICO claim under Rule 12(b)(6).

This dismissal applies to all Defendants regardless of whether they have moved under Rule 12(b)(6). With respect to Plaintiffs' federal RICO claim, Defendants are similarly situated. A court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants." *Silverton v. Dep't of Treasury of U.S.*, 644 F.2d 1341, 1345 (1981); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared."); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

**B.      Motion to Amend**

Plaintiffs move to amend their complaint under Rule 15 of the Federal Rules of Civil Procedure (Dkt. 99). Rule 15 permits amendment "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). If the opposing party does not consent to an amendment, "[t]he court should freely give leave when justice so requires." *Id.* This standard favors amendment and should "be applied with extreme liberality." *Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation modified).

Five factors guide the Court's analysis of whether a motion for leave to amend is appropriate: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint. *Allen v. City of*

**MEMORANDUM DECISION AND ORDER – 14**

*Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend is "futile" if the amended pleading would "fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6) [motion to dismiss]." *Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Broemer v. Tenet*, No. CV-0104340, 2003 WL 27382056, at *11 (C.D. Cal. Sept. 30, 2003) (comparing a motion to dismiss with a motion to deny amended complaint for futility).

Plaintiffs' proposed second amended complaint (Dkt. 99-1) primarily includes five additional real estate defendants; removes the phrase "upon and belief" in thirty-nine out of eighty-two instances; avers that Bonner County "functioned as a structural component" of the alleged enterprise and that the Panhandle Health District "served as a structural participant" in the enterprise; and adds various random alleged facts. Despite these additions, Plaintiffs still fail to plausibly allege predicate acts with particularity and a cohesive enterprise among Defendants based on something other than their ordinary business activities as discussed above.

Further, Plaintiffs removal of the phrase "upon information and belief" in some instances does not cure their failure to allege predicate acts with particularity. Absent specific facts regarding "the time, place, and manner of each act of fraud, plus the role of each defendant in the scheme," Plaintiffs' proposed amended allegations still fail to comply with Rule 9(b). *Lancaster*, 940 F.2d at 405 ("[Rule 9(b)] requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.").

As J&J notes, simply removing the phrase "upon information and belief" does not remedy the deficiencies in Plaintiffs' complaint which remains devoid of the detail necessary to state a RICO violation (Dkt. 122 at 9); *see Friends of Lubavitch v. Baltimore County*, No. 18-3943, 2021

**MEMORANDUM DECISION AND ORDER – 15**

WL 2260287, at *6 (D. Md. June 3, 2021) (denying motion seeking leave to amend as "futile" where "Plaintiffs propose amending their Complaint to remove the 'on information and belief' language and to add generalized allegations" (citation modified)); *Wright v. Santander Consumer USA, Inc.*, 18-CV-3675, 2020 WL 7391734, at *4 (N.D. Ga. Jan. 24, 2020) ("[S]imply removing this phrase would not remedy the deficiencies with Plaintiff's complaint because it would still be void of any factual allegations."); *Thornton v. Lashbrook*, No. 17-CV-761, 2018 WL 3861619, at *1 (S.D. Ill. Aug. 14, 2018) (excluding the phrase "on information and belief" is not necessary and does not change the substance).

Plaintiffs proposed amendments do not cure any of the defects with this operative complaint. Even with these amendments, Plaintiffs still fail to plausibly state a federal RICO claim. As a result, the proposed amended complaint is futile because Rule 12(b)(6) would require its dismissal. Accordingly, the Court denies Plaintiffs' motion to amend their complaint.

### C.    Supplemental Jurisdiction – State Law Claims

The Court has original federal question jurisdiction over Plaintiffs' federal RICO claim under 28 U.S.C. § 1331. Plaintiffs' remaining claims are state law claims, including claims for a violation of the Idaho Racketeering Act, Idaho Code § 18-7804; fraud; breach of the warrant of habitability; negligence; gross negligence; unjust enrichment; and violation of the Idaho Consumer Protection Act, Idaho Code § 48-603 (Dkt. 2). The Court may only adjudicate these claims if it retains supplemental jurisdiction under § 1367.

The doctrine of supplemental jurisdiction "allow[s] courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by statute*, § 1367, *as recognized in Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and

weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). Section 1367 provides that, with certain exceptions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a).

A district court may decline to exercise supplemental jurisdiction, however, where the court has dismissed all claims over which is has original jurisdiction. § 1367(c)(3). Here, the only claim over which the Court has original jurisdiction is Plaintiffs' federal RICO claim. Because the Court dismisses that claim, it declines to exercise supplemental jurisdiction over Plaintiffs' state law claims under § 1367(c)(3).

## IV.    ORDER

**IT IS HEREBY ORDERED:**

1.    Defendants J&J Development, LLC, Joshua Pilch, Jacob Marble, and Pilch Custom Homes, Inc.'s Motion to Dismiss under Rule 12(b)(6) (Dkt. 80) is **GRANTED.** Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. §§ 1961–1968, is **DISMISSED WITH PREJUDICE**. This dismissal applies to **ALL DEFENDANTS**.

2.    Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**. The period of limitations for Plaintiffs' state law claims is tolled for thirty days after their dismissal under 28 U.S.C. § 1367(d), unless state law provides for a longer tolling period.

3.    Plaintiffs Motion to Amend Complaint (Dkt. 99) is **DENIED**.

4.    Because the Court's Order applies to all Defendants, the Court denies the remaining pending motions as moot:

     a.   Defendant Ruth Barbey and Logan Trail, LLC's Motion to Dismiss or Decline Regarding Jurisdiction (Dkt. 26) is **DENIED** as **MOOT**.

     b.   Defendant Ruth Barbey and Logan Trail, LLC's Motion to Dismiss on Pleadings (Dkt. 28) is **DENIED** as **MOOT**.

     c.   Defendant Tom Duebendorfer's Motion to Dismiss on Pleadings (Dkt. 45) is **DENIED** as **MOOT**.

     d.   Defendant James A. Sewell and Associates, LLC's Motion to Dismiss or Decline Regarding Jurisdiction and on Pleadings (Dkt. 47) is **DENIED** as **MOOT**.

     e.   Panhandle Health District Defendants' Motion to Dismiss (Dkt. 54) is **DENIED** as **MOOT**.

     f.   Panhandle Health District Defendants' Motion for Summary Judgment for Failure to Properly File Tort Claim (Dkt. 56) is **DENIED** as **MOOT**.

     g.   Bonner County Defendants' Motion to Dismiss (Dkt. 87) is **DENIED** as **MOOT**.

     h.   Bonner County Defendants' Request for Judicial Notice in Support of Bonner County Defendants' Motion to Dismiss (Dkt. 88) is **DENIED** as **MOOT**.

     i.   Defendant Duebendorfer's Motion for Summary Judgment (Dkt. 89) is **DENIED** as **MOOT**.

     j.   Defendant Glahe's and Defendant Glahe & Associates, LLC's Motion for Summary Judgment (Dkt. 90) is **DENIED** as **MOOT**.

k.  Plaintiffs' Rule 56(d) Motion to Deny or Defer Defendants' Motions for Summary Judgment to Allow for Discovery (Dkt. 96) is **DENIED** as **MOOT**.

l.  Plaintiffs' Motion for Entry of Default Against Defendant Leatherman Development LLC (Dkt. 130) is **DENIED** as **MOOT**.

DATED: April 16, 2026

Amanda K. Brailsford
U.S. District Court Judge